## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| ARLENE GREEN, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No.: 6:09-CV-1610-RDP** |
| | } | |
| MICHAEL J. ASTRUE, Commissioner | } | |
| Social Security Administration, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Arlene Green brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act") seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds the decision of the Commissioner is due to be affirmed.

## I.    Procedural History

Plaintiff filed her application for a period of disability and DIB under Title II of the Act on March 7, 2007, alleging a disability onset date of December 15, 2006.[1] (Tr. 76, 88, 91). Plaintiff's initial application was denied on May 9, 2007. (Tr. 62-68). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 11, 69-73 ). Plaintiff's request was granted and a hearing was held before ALJ Randall C. Stout on October 7, 2008. (Tr. 10-11, 20, 26). In his

---

[1]On December 14, 2006, the same Administrative Law Judge, Randall C. Stout, issued an unfavorable decision on prior applications filed by Plaintiff for disability, DIB, and Supplemental Security Income ("SSI"). Plaintiff did not pursue any further appeal with regard to that decision, thereby making that the final decision of the Commissioner. (Tr. 46-61).

November 17, 2008 decision, the ALJ determined Plaintiff suffers from severe impairments of degenerative joint disease of C5-6 and C6-7 and gastroesophageal reflux disease (GERD).  (Tr. 13).  It was the ALJ's finding that these impairments, either singly or in combination, were not so severe as to meet one of the impairments listed in 20 C.F.R. Part 404 Subpart P, Appendix 1 (20 C.F.R. 404.1525 and 404.1526).  The ALJ further determined that Plaintiff retained the residual functional capacity ("RFC")[2] to perform light work, as defined by the Social Security Regulations and Dictionary of Occupational Titles, which would include occasional lifting and carrying up to 20 pounds, and frequent lifting and carrying up to 10 pounds.  (Tr. 16, Finding No. 5).  Additionally, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, even though she is unable to perform any past relevant work.  (Tr. 18-19).  Based on this finding, the ALJ subsequently determined Plaintiff was not disabled as defined under the Act.  (Tr. 19).  On June 12, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  (Tr. 1).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.  (Tr. 1).

Plaintiff was born May 23, 1957, and has a GED.  (Tr. 18, 110, 138).  Plaintiff is married, lives with her spouse, and has four daughters who no longer live with her.  (Tr. 14, 77, 95, 100).  Plaintiff worked as a nursing aide from 1990 through December 30, 2003, but has not been gainfully employed, either part-time or full time, since her disability onset date of December 15, 2006.[3]  (Tr.

---

[2] A claimant's RFC is what the claimant can do despite their impairment.

[3] Plaintiff has not worked since June 15, 2004, and claims to have lost her job in 2003 due to her condition.  (Tr. 103, 106).

88, 107).  Plaintiff alleges she suffers from the following conditions which prevent her from working:  neck, shoulder, and upper back pain, high blood pressure, COPD, and GERD.  (Tr. 104, 174).

On March 8, 2007, a Daily Activities Questionnaire was completed by Plaintiff's daughter in which she reported Plaintiff could dress, clean and groom herself (although it took her twice as long as it used to); could cook (although with difficulty); could grocery shop; do some household chores with help; drive a short distance; and go outside. ( Tr. 95-96).  The report also made mention of Plaintiff's pain with regard to finishing a task or chore.  (Tr. 97).  On March 13, 2007, Plaintiff completed her own Daily Activities Questionnaire.  (Tr. 100-04).  Plaintiff stated she sleeps four hours each night, shops, cooks meals, and cleans (although she does require help), but gives up on most tasks before they are completed.  (*Id.*).  Plaintiff further stated she leaves the house two to three times each week, often with her daughter, but claimed to have no social life.  (Tr. 102-03).

On November 29, 2004, Plaintiff entered Northwest Medical Center Emergency Room complaining of pain at the left outer breast near her armpit.  (Tr. 139-41).  Plaintiff was found to have prominent pleural fat at the left ventricular apex and acute pluritis.  (Tr. 142, 144).  Mild degenerative disc disease was seen at the thoracic spine, but skeletal structures were otherwise normal.  (Tr. 144).  It was also noted that Plaintiff likely had COPD and bilateral granulomas.  (Tr. 144).  Plaintiff was discharged the same day.  (Tr. 139-41).

In a Psychiatric Review Technique completed on April 3, 2007, Plaintiff was found to have no severe impairments nor functional limitations.  (Tr. 146-59).  Plaintiff's allegations of acute chronic neck pain, upper back pain, cervical spasms, COPD, and past depression were noted.  (Tr. 149, 158).

A medical evaluation/case analysis conducted by Dr. Robert G. Haas on April 4, 2007, noted Plaintiff's alleged neck and upper back pain, as well as radiographs in MER that showed MDIS. (Tr. 160). Dr. Haas recommended Plaintiff undergo a CE exam with ROMs, MS and neuro exams, and gait and squat description to assess her functional limitations. (Tr. 160). On May 9, 2007, Dr. Haas referred to Plaintiff's allegation of mid-back pain noting mild degenerative disk disease of the T-spine noted on an old CXR with 60 degree flex of L Spine on CE exam, and recommended frequent posturals. (Tr. 165). Dr. Haas also made mention of degenerative disk disease of the C-Spine with dec ROM on CE exam, and recommended Med RFC with frequent overhead and frequent handling. (Tr. 165). Plaintiff's grip was four and equal, and her COPD appeared well-controlled with medication. (Tr. 165).

Dennis Putnam, a medical consultant, completed a Physical Residual Functional Capacity Assessment of Plaintiff in which his primary diagnosis was degenerative disk disease, and his secondary diagnosis was hypertension and COPD. (Tr. 166-73). It was noted that Plaintiff's hypertension was well-controlled with medication. (Tr. 168). Plaintiff's complaints of chronic neck pain, upper back pain, cervical spasms, and COPD were also noted. (Tr. 168). According to the Assessment, Plaintiff could occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; sit, stand, and/or walk about six hours in an eight hour workday; frequently climb a ramp or stairs; balance, stoop, kneel, crouch, and crawl; was unlimited in pushing or pulling, fingering and feeling; but could only occasionally climb a ladder, rope or scaffold; was limited in reaching in all directions and handling; and was to avoid concentrated exposure to extreme cold and vibration. (Tr. 167-70). Putnam found Plaintiff's statements to be partially credible and opined her

"allegations severely impact function, but do not prevent all [substantial gainful activity]."[4]  (Tr. 171).

Dr. Frank Gillis completed a consultative disability examination of Plaintiff on April 26, 2007.  (Tr. 161).  Plaintiff alleged occasional pain radiating to both her shoulders and elbows, pain on the back of her thighs when walking, and rated her pain as a seven or eight on a scale of ten.  (Tr. 161).  Plaintiff claimed to be unable to sweep, mop, or lift anything, was limited to sitting three to four hours at a time, standing no more than one hour, and walking no more than two hours.  (Tr. 161).  Plaintiff claimed to have been fired from her last job due to her restrictions.  (Tr. 161).  It was noted that Plaintiff was diagnosed with bulging disc in the neck and low back pain with degenerative disc disease in 2003.  (Tr. 161).  Additionally, it was noted that Plaintiff had previously undergone physical therapy on her neck, was put on transaction, and given a TENS unit, which she felt actually worsened her pain.  (Tr. 161).  In his review of systems, Dr. Gillis noted Plaintiff's hypertension, COPD, and GERD.  (Tr. 161).  Dr. Gillis opined Plaintiff was well nourished, alert, oriented with no acute distress, her lungs, heart, breast, abdomen, and extremities were all normal, and her neurological exam was normal.  (Tr. 161-163).  Dr. Gillis further indicated Plaintiff's neck was supple with no JVD, bruits, thyromegaly or spasms, but noted tenderness involving the paraspinious muscles, as well as the trapezius muscles bilaterally.  (Tr. 162-63).  He found Plaintiff's flexion to be thirty degrees, extension ten degrees, right lateral flexion thirty degrees, left lateral flexion thirty degrees, and right and left rotation seventy degrees.  (Tr. 162).  Plaintiff was able to get off and on the exam table and perform all maneuvers requested by Dr. Gillis, but Plaintiff's facial grimacing

---

[4]Dr. Putnam used the term "SGA" and this court interprets it to mean "substantial gainful activity."  (Tr. 171)

during these maneuvers was noted.  (Tr. 162-63).  Plaintiff had a normal ambulatory gait, was able to achieve a full squat, could rise from that position, and had an excellent heel toe walk without any balance problems.  (Tr. 163).  Dr. Gillis' diagnosis was degenerative disk disease involving the cervical and lumbar spine with chronic neck and back pain.  (Tr. 164).  Based on Plaintiff's medical records and his exam of Plaintiff, Dr. Gillis opined Plaintiff "would have difficulty with job requirements involving prolonged standing, sitting, walking, bending, lifting, pushing, pulling, bending or twisting of head and or waist."  (Tr. 164).

Dr. Farouk Raquib treated Plaintiff on February 18, 2007, March 20, 2007, April 19, 2007, May 17, 2007, June 19, 2007, September 20, 2007, November 21, 2007, July 5, 2008, and August 5, 2008.  (Tr. 180-96).  During these visits, Plaintiff consistently complained of bilateral neck pain, upper and lower back pain, left leg and knee pain, shoulder pain, left arm, wrist and elbow pain, and restless leg syndrome.  (Tr. 182, 186, 188, 189, 191, 198, 200).  Dr. Raquib's diagnoses regularly included: bronchospasm; tobacco dependence; osteoporosis; restless leg syndrome; chronic pain syndrome including upper neck pain, back pain, chronic myofascial lumbar pain, and radical pain of the upper extremities; hypertension which was mostly well controlled; and GERD which was symptomatically stable.  (*Id.*).  Dr. Raquib's treatment plan also remained consistent.  Dr. Raquib consistently refilled Plaintiff's prescriptions of Diovan HCT, Lortab, Xonpenex, Centrum Silver, Zyertec, Catapres, Decadron for better blood pressure control, Nexium for GERD, and Requib for restless leg syndrome.  (*Id.*).  Additionally, Dr. Raquib counseled Plaintiff to quit smoking[5] and scheduled follow-up visits.  (*Id.*).  On February 19, 2007, Dr. Raquib opined Plaintiff's neck had thyromegaly and her lungs had poor air entry with bilateral wheezing present.  (Tr. 193).  On March

---

[5]Plaintiff smoked two packs of cigarettes per day for forty years but quit in 2007.  (Tr. 161).

20, 2007, Dr. Raquib noted Plaintiff's blood pressure was under control, her lungs were clear and a physical examination showed no thyromegaly in her neck. (Tr. 191). On April 19, 2007, it was noted that Plaintiff's blood pressure was poorly controlled, but her GERD was well controlled on Nexium. (Tr. 189). On November 21, 2007, Plaintiff rated her pain an eight out of ten. (Tr. 182). Dr. Raquib indicated Plaintiff's blood pressure was under good control, and an upper back exam indicated tenderness of the thoracic spinals. (Tr. 182). On July 5, 2008, Dr. Raquib noted some joint line tenderness in Plaintiff's left knee and a cervical muscle spasm which was present in her left shoulder and neck. (Tr. 200). On August 5, 2008, Dr. Raquib noted Plaintiff had cervical muscle spasm, and limited abduction of her left wrist.[6] (Tr. 198).

As of October 7, 2008, Plaintiff was taking the following medications: Hydrocodone twice each day for pain; Nexium once each day to treat GERD; Diovan once each day to treat her blood pressure; and Xopenex twelve times each day to control her breathing. (Tr. 125).

## II.    ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's age, education, and past

---

[6]Plaintiff suffered an injury to her left wrist while working at the nursing home, resulting in surgery and fusion of her wrist bones. Plaintiff was allotted 10% disability for this injury. (Tr. 198).

work experience prevents the performance of any other work.  In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment."  *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir.1982) (other citations omitted).  Once a claimant shows she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment."  *Id.*

The ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability of December 15, 2006.  (Tr. 13, Finding No. 2).  Based on the medical evidence presented, the ALJ concluded Plaintiff has a severe combination of impairments including degenerative joint disease of C5-6 and C6-7 and GERD.  (Tr.13, Finding No. 3).  However, the ALJ found this combination of impairments did not meet or equal one of the listed impairments in the Act. (Tr. 15, Finding No. 4).  The ALJ determined Plaintiff retained the RFC to perform light work, as stated by Dr. Gillis in his April 26, 2007 Disability Exam.  (Tr. 15, Finding No. 5; 161).  Specifically, the ALJ found Plaintiff should not perform constant lifting, bending, standing, sitting, walking, pushing, pulling, bending or twisting of her head and/or neck, but could do these activities one-third to two-thirds of the day.  (Tr. 16).  Further, the ALJ found Plaintiff could perform light work as defined in the Social Security Regulations and Dictionary of Occupational Titles which

would include occasional lifting and carrying of up to twenty pounds and frequent lifting and carrying of up to ten pounds. (Tr. 16). Accordingly, the ALJ determined Plaintiff was unable to perform any past relevant work. (Tr. 18, Finding No. 6).

A vocational expert ("VE") was present during the hearing and testified that given Plaintiff's age, education, work experience, and RFC, Plaintiff would be able to perform the requirements of representative occupations such as an assembler of small parts, a sub-assembler of electronic components, and a nut and bolt assembler, all of which exist in numbers of 20,000 or greater within a 200-mile radius of Florence, Alabama, and in numbers in excess of 225,000 in the national economy. (Tr. 19). The VE further testified that, even if Plaintiff was restricted to occasional lifting, carrying, reaching, handling, and so forth, there were additional jobs she could perform such as counter clerk, gate guard, and sales clerk, all of which exist in significant numbers in the national economy. (Tr. 19). Considering the same criteria, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 18, Finding No. 10). The ALJ concluded Plaintiff has not been under a disability, as defined in the Act, from December 15, 2006, through the date of his decision. (Tr. 19, Finding No. 11).

## III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner, reversed and remanded for further consideration. Plaintiff contends the ALJ committed reversible error in two ways: (1) the ALJ failed to accord proper weight to the opinion of his own consultative examiner; and (2) the ALJ failed to consider all of Plaintiff's impairments either in combination or in isolation. (Pl. Br. at 6, 8). Specifically, Plaintiff asserts that because Dr. Gillis stated she is unable to do *prolonged* sitting, standing, walking, lifting, or bending, there is no

work she could do to make up an eight hour work day.  (Pl. Br. at 6).  With regard to Plaintiff's second contention, Plaintiff asserts the ALJ failed to consider osteoporosis, degenerative disc disease of the lumbar spine, and degenerative disc disease of the thoracic spine, among other conditions. (Pl. Br. at 8).

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.1986).  Title 42 U.S.C. §§ 405(g) and 1383© mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (*citing Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (*quoting Bloodsworth*, 703 F.2d at 1239) (internal citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at

10

701.

## V.      Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal.

### A.        The ALJ Properly Considered the Opinion of Dr. Gillis

Plaintiff contends the ALJ committed reversible error in creating his own definition of "prolonged" in interpreting Dr. Gillis' opinion, without re-contacting Dr. Gillis, and therefore, shows the ALJ's decision was not based on substantial evidence. (Pl. Br. at 6-7). For the reasons stated below, this argument misses its mark. The ALJ's interpretation of Dr. Gillis' use of "prolonged" was a reasonable inference, and substantial evidence supports the ALJ's RFC assessment. In determining Plaintiff's RFC, the ALJ afforded great weight to Dr. Gillis' and Dr. Raquib's opinions, as well as the other evidence of record.

It is well-settled law that an ALJ may not substitute his own judgment for that of a physician. *Graham v. Bowen,* 786 F.2d 1113, 1115 (11th Cir. 1986); *Freeman v. Schweiker,* 681 F.2d 727, 731 (11th Cir. 1982). If a physician's report is inadequate or incomplete, the ALJ should re-contact the medical source who performed the consultative examination. 20 C.F.R. §§ 404.1519p(b), 416.919p(b). Here, however, Dr. Gillis' report was neither incomplete nor inadequate.[7] Dr. Gillis

---

[7]A complete consultative examination report includes the following: (1) the claimant's major or chief complaints; (2) a detailed description of the claimant's history of the major complaints; (3) a description of pertinent positive and negative detailed findings based on the history, examination, and lab tests related to the major complaints and any other abnormalities or lack thereof found during the exam or lab tests; (4) the results of the lab tests; (5) the diagnosis and prognosis for the claimant's impairment; (6) a statement about what the claimant can still do despite the impairments; and (7) an explanation or a comment by the medical source on the claimant's major complaints. 20 C.F.R. § 416.919n(c)(1)-(7). Dr. Gillis's report satisfied each of these criteria.

11

opined Plaintiff "would have difficulty with job requirements involving *prolonged* standing, sitting, walking, bending, lifting, pushing, pulling, bending or twisting of head and/or waist."  (Tr. 164) (emphasis added).  "Prolonged" is neither defined nor used in the Regulations or in the Dictionary of Occupational Titles.  The ALJ correctly interpreted "prolonged" to mean "constant" as set forth in the Regulations and in the Dictionary of Occupational Titles, finding that Plaintiff could not perform *constant* standing, sitting, walking, bending, lifting, pushing, pulling, bending or twisting of head and/or waist.  (Tr. 16).

During the hearing, the ALJ questioned the VE regarding what jobs Plaintiff could perform if she was "able to *frequentl*y stand, sit, walk, bend, lift, push and pull, bend and twist her head and/or her wrist."  (Tr. 41) (emphasis added).  The VE testified that based on these restrictions, Plaintiff could perform job functions as an assembler of small parts, sub-assembler electronic component, and nut and bolt assembler, all of which exist in significant numbers in the economy.  (Tr. 42).  The ALJ then changed Plaintiff's restrictions from "frequent" to "occasional," thereby reducing all activity to "occasional."  (Tr. 42).  Based on this hypothetical, the VE testified Plaintiff could perform positions such as a counter clerk, gate guard, or sales clerk of food items.  (Tr. 43).

"Constant" means an activity or condition which exists *two-thirds or more* of the time.  (Tr. 16; U.S. Dep't. of Labor, Dictionary of Occupational Titles, (DOT) Appendix C (4th ed. 1991)).  In a process that was favorable for Plaintiff, the ALJ used "frequent" in determining the level of work she could perform.  (Tr. 42).  "Frequent" refers to an activity or condition which exits *one-third to two-thirds* of the day.  (*See* DOT Appendix C).  In using "frequent" the ALJ reduced the activity Plaintiff could undertake to *one-third to two-thirds* of the working day.[8]  (Tr. 41-42).  Even more in

---

[8]Compare with "constant" which is two-thirds or more of the day.

Plaintiff's favor, the ALJ used "occasional" in his second hypothetical to the VE, reducing the level of activity Plaintiff could perform even more. (Tr. 42). "Occasional" refers to an activity or condition which exists *no greater than one-third* of the day. (Tr. 42; DOT Appendix C). The ALJ gave Plaintiff the benefit of the doubt by interpreting "prolonged" to mean "constant" and then making a separate determination of which jobs Plaintiff could perform by reducing her activity level to "frequent" and occasional." (Tr. 16-18).

The objective medical evidence of record shows Plaintiff did not have any limitations which would preclude her from doing any work, thus supporting the ALJ's interpretation of "prolonged." Specifically, the objective medical evidence supports the ALJ's interpretation that Plaintiff could perform these activities occasionally or frequently. The ALJ afforded great weight to Dr. Gillis' opinion, because it is consistent with the objective medical evidence. (Tr. 18). Based on Dr. Gillis' examination, Plaintiff could flex and extend all digits of both hands, had only some tenderness, slight kyphosis, and no spasms were noted. (Tr. 163). Dr. Gillis further noted Plaintiff could get on and off the exam table and perform all maneuvers he requested, had a normal gait, no ataxi or spascticity, could fully squat and rise, and had an excellent heel/toe walk, her large motor group strength was a five out of five with a grip of four out of five. (Tr. 163). Dr. Gillis also noted Plaintiff had brisk LE's reflexes bilaterally, no atrophy, and her fine and gross manipulation were intact. (Tr. 163). These examination results are substantial evidence that supports the ALJ's finding that Plaintiff was not barred from all work activity.

Dr. Raquib's objective medical reports also support the ALJ's interpretation that Plaintiff could perform "frequent" or "occasional" activity. Dr. Raquib's examinations showed thyromegaly, existing only sometimes, poor air entry and bilateral wheezing at one examination, tender lumbar

paraspinals with no focal bony tenderness and bilateral straight leg raises of 90 degrees, tenderness of the thoracic spinals, joint tenderness, cervical muscle spasm present in her left shoulder and neck, and at another examination an unremarkable extremity exam. (Tr. 182, 189, 191, 193, 198, 200). Dr. Raquib's treatment records indicate only minor findings which are not severe enough to preclude Plaintiff from working and engaging in activity frequently or occasionally. Additionally, in his RFC assessment, Putnam opined that Plaintiff's "allegations severely impact [Plaintiff's] function, but do not prevent all [substantial gainful activity]." (Tr. 171).

In his RFC assessment, the ALJ found Plaintiff's severe impairments to be well-managed. (Tr. 18). Dr. Raquib's treatment records show unchanging and regular treatment which keeps Plaintiff's conditions stable and well-managed, thus indicating she would not be precluded from working. Plaintiff's hypertension is also well controlled, and her GERD is well-controlled on Nexium. (Tr. 168, 182, 189, 191, 198, 200).[9] Dr. Raquib's treatment plan of follow-up visits and medication refills remain consistent throughout Plaintiff's treatment. (Tr. 193, 191, 189, 186, 184, 182, 200, 198). As Defendant correctly highlights, "Dr. Raquib never felt the need to increase or alter Plaintiff's pain treatment or to refer her to a specialist and never indicated physical restrictions beyond those found by Dr. Gillis." (Def. Br. at 11).

Plaintiff's daily activities also support the ALJ's RFC determination. (Tr.18). The ALJ noted Plaintiff could take care of her personal hygiene, could prepare and cook some meals, went shopping with her daughters, and could perform some household chores, although she required some

---

[9]Plaintiff's hypertension was borderline well-controlled on March 20, 2007. (Tr. 191). This court does recognize Plaintiff's hypertension was poorly controlled on both February 19, 2007, and April 19, 2007, but the record indicates that with proper medication her hypertension was well-controlled. (Tr. 189, 193).

14

assistance.  (Tr. 18, 96).

Contrary to Plaintiff's assertion, the ALJ did not substitute his own hunch or intuition for the diagnosis and opinions of Plaintiff's physicians, but rather interpreted Dr. Gillis' opinion, consistent with the evidence of record and made a proper RFC finding.

### B.    The ALJ Adequately Considered All of Plaintiff's Impairments

Plaintiff's next contention is that "the ALJ did not properly go through the sequential evaluation process and did not consider all of her impairments," either in combination or isolation. (Pl. Br. at 9).  Plaintiff contends this is reversible error, because the ALJ should have found her other impairments to be severe at Step Two.

At Step Two of the sequential evaluation process, Plaintiff must prove she has a severe impairment or combination of impairments.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). It is well-settled law "that the ALJ must consider the combined effects of a claimant's impairments in determining whether [s]he is disabled." *Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986). 20 C.F.R. § 404.1523 states as follows:

> [i]n determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment if considered separately would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.

A severe impairment is any impairment or combination of impairments which significantly limits a complainant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520c; 20 C.F.R. § 404.1521a.  Essentially, Step Two acts "as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability

and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir.1987) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)); *Cantrell v. Bowen*, 724 F.2d 1571, 1573 (11th Cir. 1986); *McDaniel*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *see also Mariarz v. Secretary of Health & Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987).

In this action, Plaintiff contends the ALJ failed to consider the following impairments: osteoporosis, degenerative disc disease of the lumbar spine, and degenerative disc disease of the thoracic spine, among other conditions. (Pl. Br. at 8). At the ALJ hearing, Plaintiff alleged degenerative disk disease both in the cervical and lumbar region, positive straight leg raise, pain, well-controlled hypertension, and difficulty using her left hand and shoulder. (Tr. 30). Plaintiff admitted her whole argument came down to degenerative disk disease ("DDD"). (Tr. 30). The ALJ did find degenerative joint disease to be one of Plaintiff's severe impairments, as well as GERD. (Tr. 13). While the record shows evidence of osteoporosis and DDD at the thoracic, Plaintiff failed to raise these conditions at the hearing and did not identify these conditions as severe until this appeal. (Tr. 30). "Although the ALJ must consider the impairments the claimant alleges in determining whether the claimant is disabled, the ALJ need not scour the medical record searching for other impairments that might be disabling...that have not been identified by the claimant." *East v. Barnhart*, 197 Fed. Appx. 899, 902 (11th Cir. 2006).

In determining which conditions were severe, the ALJ discussed the following conditions: COPD, Plaintiff's right ankle injury, chronic bilateral shoulder pain, low back pain, coughing spells, hypertension both properly and improperly controlled, myofascial lumbar pain, chronic pain syndrome of the bilateral shoulder, GERD, degenerative disc disease involving cervical and lumbar

16

spine, restless leg syndrome, osteoporosis, left side neck pain, left knee pain, and wrist injury. (Tr. 14-15). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McCruter v. Bowen*, 791 F.2d 1544, 1546(11th Cir. 1986) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). At Step Two, the ALJ found Plaintiff had severe impairments of degenerative joint disease of CF-6 and C6-7 and GERD, and based on the record found most of Plaintiff's conditions to be well managed. (Tr. 13-14). While some of Plaintiff's conditions which the ALJ found not to be severe may be more than minimal, "the ALJ could not have committed any error at Step Two, because he found [Plaintiff] had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two." *Council v. Comm'r of Soc. Sec.*, No. 04-13128, slip op. at * 4 (11th Cir. Dec. 28, 2004) (citing *Jones,* 190 F.3d at 1228) (holding all that is required at Step Two is a finding that the complainant has a severe impairment or combination of impairments in order to allow the ALJ to move on to Step Three). Because the ALJ found an impairment that qualified as severe, Step Two is satisfied. *Jamison*, 814 F.2d at 588; *see* SSR 96-3p and SSR 85-28. In finding Plaintiff had a severe combination of impairments, the ALJ ruled in favor of Plaintiff at Step Two and proceeded to Step Three. (Tr. 13-15). Thus, even if there was an error, it does not constitute reversible error, because the ALJ found in favor of Plaintiff, finding some severe impairments, and proceeded in its analysis, thus satisfying Step Two's requirements. *See Council*, No. 04-13128 slip. op. at *4 (citing *Jones*, 190 F.3d at 1228).

Because the ALJ found Plaintiff did have some severe impairments and proceeded to Step Three, this case is distinguishable from those Plaintiff cites to support her argument. *See McDaniel*

17

*v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986); *Stratton v. Bowen*, 827 F.2d 1447, 1453 (11th Cir. 1987); *Flynn v. Heckler,* 768 F.2d 1273, 1274 (11th Cir. 1985) (holding in each of these cases Plaintiff did not have a severe impairment and thus failed Step Two, as opposed to this case in which the ALJ found some severe impairments and proceeded to Step Three).[10]  Plaintiff also relies on SSR 96-3p and SSR 85-28 which states, "unless the medical evidence clearly establishes all of the claimant's impairments in combination would not have more than a minimal effect on the person's physical or mental abilities to perform basic work activities, then adjudication must continue on to Step Three of the evaluation process."  (Pl. Br. at 10) (citing SSR 85-28, SSR 96-3p).  But even taking into account SSR 96-3p and SSR 85-28, the court finds the ALJ did not commit reversible error.  The ALJ did, in fact, continue on to Step Three, finding some of Plaintiff's conditions to have more than a minimal effect on her ability to perform basic work activities.  (Tr. 13-16).

Because a finding of additional severe impairments would not have affected the Step Two inquiry, Plaintiff's argument (regardless of how she characterizes it) is that the ALJ should have found these additional impairments to preclude her ability to work.  *See Council v. Comm'r of Soc. Sec.*, No. 04-13128 slip op. at *5 ("despite how [the plaintiff] has articulated it, [her argument on appeal] is actually that the ALJ should have found her mental impairment prevented her from returning to her past relevant work under step four.").  But evidence of the mere existence of impairments does not reveal the extent to which they limit Plaintiff's ability to work, nor does it undermine the ALJ's determination in regard to his RFC finding.  *Moore*, 405 F.3d at 1213 n.6 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of a medically

---

[10]*McCruter v. Bowen*, 791 F.2d 1544 (11th Cir. 1986) is also distinguishable although for a different reason.  In *McCruter*, the ALJ simply ignored objective evidence.

ascertained disability must be measured in terms of its effect upon the plaintiff's ability to work)). The ALJ properly considered Plaintiff's impairments at Step Four, finding Plaintiff did not have a combination of severe impairments which would prevent her from working. (Tr. 16).  In his RFC analysis at Step Four, the ALJ properly considered the following impairments: chronic pain, degenerative joint disease at C5-6 and C6-7, and GERD.  (Tr. 16-18).  The ALJ also properly considered both Dr. Raquib and Dr. Gillis' opinions.  In his assessment of Plaintiff's capacity, Putnam opined that Plaintiff's "allegations severely impact function, but do not prevent all [substantial gainful activity]."[11]  (Tr. 171).  Plaintiff has failed to show how the addition of these impairments would make her impairment or combination of impairments severe enough to limit her ability to work.  There is substantial evidence of record to support the ALJ's finding Plaintiff was not precluded from all work, and he did not commit any reversible error in his application of legal standards.

## VII.    Conclusion

For the reasons stated above, the court concludes the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____25th_____ day of August, 2010.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

_____

[11]Dr. Putnam used the term "SGA" and this court takes it to mean "substantial gainful activity."  (Tr. 171)

19